**Raymond V. MOYLE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Jones Oregon Stevedoring Co., Respondents.**

No. 96–70875.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1998.

Decided June 29, 1998.

---

**1118**

Meagan Flynn (argument), and Kevin Keaney (brief), Pozzi, Wilson, Atchison, LLP, Portland, Oregon, for the petitioner.

Laura J. Stomski, United States Department of Labor, Office of the Solicitor, Washington, DC, for the respondents.

Before: LAY,* GOODWIN, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Raymond V. Moyle petitions for review of the Benefits Review Board's ("Board") summary affirmance of an Administrative Law Judge's ("ALJ") decision. The ALJ found that Moyle's disability benefits could be garnished to satisfy his delinquent spousal support payments. Moyle challenged the garnishment as prohibited by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 916 ("LHWCA Anti–Alienation provision"). But the ALJ found that a later-enacted Social Security Statute, 42 U.S.C.

§ 659 ("SSA Garnishment provision"), impliedly repealed the LHWCA Anti–Alienation provision and permitted the garnishment. We affirm.

## BACKGROUND

Raymond V. Moyle was awarded compensation for permanent total disability on June 26, 1981. Since 1982, those benefits have been paid out of the Special Fund established by 33 U.S.C. § 944 of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[1]

In 1991, an Oregon state court ordered the garnishment of Moyle's LHWCA disability benefits to satisfy his delinquent spousal support payments. The Director of the Division of Longshore and Harbor Workers' Compensation ("Director") notified Moyle that the division would comply with the court order. Moyle then requested a hearing before an ALJ. Before the ALJ, Moyle argued that the LHWCA Anti–Alienation provision prohibited garnishment of his disability payments to satisfy his delinquent spousal support payments. The LHWCA Anti–Alienation provision provides that:

> No assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

33 U.S.C. § 916.

The ALJ granted the Director's motion for summary judgment, finding that garnishment of Moyle's benefits was proper. The ALJ determined that the LHWCA Anti–Alienation provision had been repealed in relevant part by the later-enacted SSA Garnishment provision,[2] which provides that:

---

*The Hon. Donald P. Lay, Senior U.S. Eighth Circuit Judge, sitting by designation.

1. Section 908(f) of the LHWCA limits an employer's workers compensation liability to the first two years of permanent disability, with subsequent compensation coming from the Special Fund. *See* 33 U.S.C. § 908(f)(2)(A). The Special Fund is financed by a yearly assessment on certain maritime businesses. *See* 33 U.S.C. § 944(c).

2. The SSA Garnishment provision became law in 1975, forty-eight years after the enactment of the LHWCA Anti–Alienation provision. *See* Pub.L. No. 93–647, § 101(a), § 459, 88 Stat. 2337, 2357 (1975) (enacting the SSA statute); Ch. 509, § 16, 44 Stat. 1424, 1434 (1927) (enacting the LHWCA statute).

Notwithstanding any other provision of law ... moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, ... to any ... legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

42 U.S.C. § 659(a) (West Supp.1998).[3] Therefore, the ALJ concluded that Moyle's disability benefits could be garnished under the SSA Garnishment provision.

In reaching this decision, the ALJ noted that the Office of Personnel Management promulgated a regulation that expressly provides that LHWCA benefits are subject to garnishment pursuant to the SSA Garnishment provision. *See* 5 C.F.R. § 581.103(c)(5) (authorizes garnishment of "[b]enefits received under the Longshoremen's and Harbor Workers' Compensation Act").

Moyle then appealed to the Benefits Review Board. The ALJ's decision was summarily affirmed by operation of law when the Board failed to decide the appeal within a year of its filing. We have jurisdiction under 33 U.S.C. § 921(c).

### ANALYSIS

#### A. Standard of Review

■ We review decisions of the Benefits Review Board for errors of law. *See Sproull v. Director, OWCP*, 86 F.3d 895, 898 (9th

Cir.1996), *cert. denied* — U.S. —, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). No special deference is given to the Board's interpretations of the LHWCA. *Id.* But we accord "considerable weight" to the Director's statutory construction of the LHWCA. *See Mallott & Peterson v. Director, OWCP*, 98 F.3d 1170, 1172 (9th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). "This deference extends not only to regulations articulating the Director's interpretation, but also to litigating positions asserted by the Director in the course of administrative adjudications...." *Id.*

■ But we owe no deference to an agency's resolution of statutory conflicts that implicate legislation that is not administered by that agency. *See Shanty Town Assocs. Ltd. Partnership v. EPA*, 843 F.2d 782, 790 n. 12 (4th Cir.1988) (citing *New Jersey Air Nat'l Guard v. FLRA*, 677 F.2d 276, 281–82 n. 6 (3d Cir.1982)). Following this rule, our court has held that it must independently resolve conflicts between statutes administered by one agency and regulations promulgated by another agency. *See Internal Revenue Serv. v. FLRA*, 706 F.2d 1019, 1023 (9th Cir.1983).

■ Therefore, we do not defer to the Director's resolution of the apparent conflict between the LHWCA Anti–Alienation provision and the SSA Garnishment provision. Similarly, we owe no deference to an agency's regulation that attempts to resolve a conflict between the LHWCA Anti–Alienation provision and the SSA Garnishment provision.

#### B. Law of Implied Repeal [4]

■ The only issue in this case is whether the SSA Garnishment provision im-

---

3. The SSA Garnishment provision was amended in 1996 and 1997. The amendments did not significantly alter the statutory language relevant here. *See* Pub.L. No. 105–33, Title V, § 5542(a), (b), 111 Stat. 251, 631 (1997); Pub.L. No. 104–193, Title III, § 362(a), 110 Stat. 2105, 2242 (1996).

4. This case does not concern an express repeal because neither statute specifically refers to the other. *See* 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.07, at 332 (reasonably certain identification of affected act neces-

sary for express repeal) ("*Sutherland*"). The fact that the SSA statute provides that it is effective "[n]otwithstanding any other provision of law" also does not evidence an express repeal of the LHWCA statute. *See Kee Leasing Co. v. McGahan (In re the Glacier Bay)*, 944 F.2d 577, 582 (9th Cir.1991) ("notwithstanding" phrase by itself did not indicate congressional intent to repeal other statute); *Sutherland*, § 23.08, at 334 ("[a]n express general repealing clause to the effect that all inconsistent enactments are repealed, should legally be a nullity").

pliedly repealed the LHWCA Anti–Alienation provision, thereby permitting garnishment of Moyle's disability benefits.

■■■ There are two kinds of implied repeal:

> (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*Kee Leasing Co. v. McGahan (In re the Glacier Bay)*, 944 F.2d 577, 581 ·(9th Cir. 1991) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)). In either case, "the intention of the legislature to repeal must be *clear and manifest.*" *Id.* (internal quotations omitted) (emphasis added). "Repeals by implication ... are not favored and will only be found when the new statute is clearly repugnant, in words or purpose, to the old statute...." *Id.* (internal quotation and citation omitted).

■ The second type of implied repeal is not present here because the legislation that included the SSA Garnishment provision did not cover the entire subject of workers' compensation. *See generally* Pub.L. No. 93–647, sec. 101(a), § 459, 88 Stat. 2337, 2357 (1975). Therefore, our analysis focuses on whether the SSA Garnishment provision irreconcilably conflicts with the LHWCA Anti–Alienation provision. *See Glacier Bay*, 944 F:2d at 581. If the statutes are irreconcilable, the SSA Garnishment provision controls because it is the later-enacted statute. *See Id.*[5]

## C. Irreconcilable Conflict

■ "When interpreting a statute, we ordinarily first look to the plain meaning of the language used by Congress. But if the statute is ambiguous, we consult the legislative history, to the extent that it is of value, to aid in our interpretation." *Straub v.·A.P. Green, Inc.*, 38 F.3d 448, 452 (9th Cir.1994) (citations omitted). ·

The plain language of the SSA Garnishment provision permits garnishment of *"moneys (the entitlement to which is based upon remuneration for employment)* due from, or payable by, the United States ... to any individual...." 42 U.S.C. § 659(a) (emphasis added). The provision further provides a definition of the types of payments that qualify as "remuneration for employment." The provision explains that such moneys include:

> *periodic benefits ... or other payments ... under any other system or fund established by· the United States* which provides for the payment of pensions, retirement or retired pay, annuities, dependents' or survivors' benefits, or similar amounts payable on account of personal services performed by the individual or any other individual....

42 U.S.C. § 659(h)(A)(ii)(II). Thus, the Director argues that the SSA Garnishment provision permits garnishment of Moyle's LHWCA benefits because they are periodic benefits paid from a special fund established by the United States pursuant to 33 U.S.C. § 944.

Moreover, the SSA Garnishment provision also defines "remuneration for employment" to include "worker's compensation benefits paid or payable under Federal or State law.·.·.." 42 U.S.C. § 659(h)(A)(iii).[6]

---

5. Moyle argues that the LHWCA Anti–Alienation provision (enacted in 1927) should control. because although ·the SSA Garnishment provision was enacted in 1975, the LHWCA was amended in 1984—and Congress did not amend the LHWCA Anti–Alienation provision. *See generally* Pub.L. No. 98–426, 98 Stat. 1639 (1984). Moyle contends that Congress' failure to amend the Anti–Alienation provision suggests that it wanted the LHWCA Anti–Alienation provision to control over the SSA Garnishment provision. This argument lacks merit. *See Glacier Bay*, 944 F.2d at 579–83 (finding earlier-enacted statute impliedly repealed by later-enacted statute even though

Congress had amended earlier statute after later statute was enacted).

6. This definition of "remuneration for employment" was added by the 1996 amendments to the SSA provision. *See* Pub.L. 104–193, Title III, § 362(a), Aug. 22, 1996, 110 Stat. 2242. Although this definition was added after the ALJ decided Moyle's case in 1994, it provides further support for the proposition that Congress intended for the SSA Garnishment provision to apply to payments such as those made to Moyle under the LHWCA.

Moyle's LHWCA disability payments can thus also be characterized as "remuneration for employment" that may be garnished under the SSA Garnishment provision because such payments are worker's compensation benefits that are payable pursuant to federal law. Therefore, the plain language of the SSA Garnishment provision and its definitions suggest that the provision *does* apply to Moyle's LHWCA benefits. However, because the SSA Garnishment provision does not explicitly mention benefits paid under the LHWCA, we also look to legislative history to determine whether Congress intended to repeal the LHWCA Anti–Alienation provision with the SSA Garnishment provision.

### a. Legislative History

In 1977, Senator Nunn introduced various technical amendments to the SSA, including a definition of the SSA Garnishment provision language that permits garnishment of moneys "the entitlement to which is based upon remuneration for employment...." 42 U.S.C. § 659(a). The proposed 1977 amendments defined "remuneration for employment" as "periodic benefits" paid from a "fund established by the United States."[7] 123 Cong. Rec. 9015, 9016 (March 24, 1977); 123 Cong. Rec. 12909, 12910 (April 29, 1977).

More importantly, the legislative history explains that the amendments provide a definition of "remuneration for employment" because there were "questions as to the kinds of remuneration which are covered by the [SSA Garnishment provision]...." 123 Cong. Rec. 9015, 9019 (March 24, 1977); 123 Cong. Rec. 12909, 12913 (April 29, 1977). The legislative history further lists the various types of payments that may be garnished and explicitly states that the SSA Garnishment provision applies to *"payments under ... the Longshoremen's and Harbor Work-*

*ers' Compensation Act* (but only in cases where the payments are made by the United States)." 123 Cong. Rec. 9015, 9019 (March 24, 1977); 123 Cong. Rec. 12909, 12913 (April 29, 1977) (emphasis added).[8]

Therefore, this legislative history *explicitly* provides that the SSA Garnishment provision permits garnishment of LHWCA benefits. The purpose of the SSA Garnishment provision is thus "clearly repugnant" to the purpose of the LHWCA Anti–Alienation provision, which prohibits garnishment of LHWCA benefits. *See Glacier Bay,* 944 F.2d at 581 (implied repeals "will only be found when 'the new statute is clearly repugnant, in words or purpose, to the old statute....'").

Based on the plain language of the SSA Garnishment provision and its legislative history, we find that the SSA Garnishment provision irreconcilably conflicts with the LHWCA Anti–Alienation provision. The legislative history that accompanies the SSA Garnishment provision's 1977 amendments demonstrates Congress' "clear and manifest" intent to repeal the LHWCA Anti–Alienation provision with the SSA Garnishment provision.

### D. Moyle's Arguments

Moyle makes two main arguments to support a finding that the statutes are *not* in irreconcilable conflict. Both arguments are based on purported ambiguities in the language of the SSA Garnishment provision. Neither of these arguments succeed because they fail to undermine the plain language of the SSA Garnishment provision and its legislative history, both of which evidence the legislature's "clear and manifest" intent to

---

7. The 1977 proposed amendments, including this definition, were ultimately enacted into law in substantially identical terms. The definition of "remuneration for employment" was originally found in 42 U.S.C. § 662(f). However, § 622 was repealed effective six months after August 22, 1996. *See* Pub.L. 104–193, Title III, § 362(b)(1), Aug. 22, 1996, 110 Stat. 2246. But the above definition of "remuneration for employment" can now be found at 42 U.S.C. § 659(h)(A)(ii)(II) in substantially the same terms.

8. Finally, the Office of Personnel Management ("OPM") has issued a regulation that provides that the SSA Garnishment provision authorizes garnishment of "[b]enefits received under the Longshore and Harbor Workers' Compensation Act." *See* 5 C.F.R. § 581.103(c)(5). We note that this regulation also supports the Director's argument, even though we recognize that the standard of review in this case does not require us to defer to one agency's resolution of a statutory conflict involving legislation that is not administered by that agency. *See Shanty Town,* 843 F.2d at 790 n. 12; *Internal Revenue,* 706 F.2d at 1023.

repeal the LHWCA Anti–Alienation provision with the SSA Garnishment provision.

### 1. Moneys Due From or Payable by the United States

■ Moyle argues that the two statutes are *not* in conflict because the SSA Garnishment provision only permits garnishment of "moneys ... due from, or payable by, the United States" to satisfy spousal support payments. *See* 42 U.S.C. § 659. He contends that his LHWCA benefits are not "due from, or payable by," the United States and therefore are not covered by the SSA Garnishment provision.

Moyle's LHWCA benefits are paid from the Special Fund established under 33 U.S.C. § 944. The Treasurer of the United States is the custodian of the Fund. *See* 33 U.S.C. § 944(a). "[A]ll moneys and securities in [the Special Fund] shall be held in trust by such Treasurer *and shall not be money or property of the United States.*" *Id.* (emphasis added). The Special Fund is financed by a yearly assessment levied against maritime self-insured employers and insurance companies. *See* 33 U.S.C. § 944(c). Thus, Moyle contends that his benefits are not "due from, or payable by" the United States because the Special Fund is financed by private employers and is not the property of the United States.

The Director admits that the Special Fund is not the property of the United States and, therefore, moneys owed from the Fund are not "due from" the United States. But the Director argues that the Special Fund payments are moneys "payable by" the United States because the Treasurer, as custodian, "is authorized to disburse moneys" from the Fund. *See* 33 U.S.C. § 944(b); *see also* 20 C.F.R. § 702.143 ("[t]he Treasurer shall make disbursements from such funds only upon the order of the Director, OWCP ....").

Several terms in the SSA Garnishment provision are defined in related provisions, *see* 42 U.S.C.A. § 659(i) (West Supp.1998); 42 U.S.C. § 662 (1994) (repealed), but the meaning of the term "payable by" is not set out. But the plain meaning of the term

suggests that Moyle's LHWCA benefits are "payable by" the United States. *See Straub*, 38 F.3d at 452 (look to "plain meaning" of language used by Congress when interpreting a statute). Black's Law dictionary provides that: "A sum of money is said to be payable when a person is under an obligation to pay it." BLACK'S LAW DICTIONARY 1128 (6th ed.1990). Black's also defines the verb "pay": "To discharge a debt by tender of payment due; to deliver to a creditor the value of a debt, either in money or in goods, for his acceptance." *Id.*

Under this definition, Moyle's benefits are "payable" by the United States because the Treasurer is under an obligation to tender the payments due to Moyle from the Special Fund. Thus, Moyle fails to show that his LHWCA benefits are *not* moneys "payable by" the United States within the meaning of the SSA Garnishment provision.

### 2. Application of the SSA Garnishment Provision to Private Employees

■ Moyle also argues that the SSA Garnishment provision only permits garnishment of moneys paid to *federal employees*. If the SSA Garnishment provision only applies to federal employees, it cannot be in conflict with the LHWCA Anti–Alienation provision, because the LHWCA only provides compensation for *private sector* employees such as Moyle. *See* LHWCA § 903(b) ("[n]o compensation shall be payable in respect of the disability or death of an officer or employee of the United States, or any agency thereof, or any State or foreign government, or any subdivision thereof.")

The plain language of the SSA Garnishment provision *does not* limit the provision's application to federal employees. Indeed, the statute permits garnishment of moneys "payable by, the United States ... *to any individual* ...." 42 U.S.C. § 659(a).[9]

Despite this plain language, Moyle points to legislative history and case law in support of his argument. But these sources do not limit the SSA Garnishment provision's application to federal employees, nor do they di-

---

**9.** The term "individual" is not defined in related statutes. *See* 42 U.S.C.A. § 659(i) (West Supp.

1998); 42 U.S.C. § 662 (1994) (repealed).

rectly discuss whether the SSA Garnishment provision permits garnishment of LHWCA benefits. But Moyle relies on these sources because they routinely discuss the SSA Garnishment provision in terms that suggest that it only applies to federal employees.

For example, the legislative history available in *United States Code Congressional and Administrative News* explains that although federal employees' wages previously could not be garnished, the SSA Garnishment provision "provide[s] that the wages of Federal employees, including military personnel, would be subject to garnishment in support and alimony cases." S. Rep. 93–1356, at ——, *reprinted in* 4 U.S.C.C.A.N. 8133, 8157 (1974). But this statement merely discusses how the SSA Garnishment provision affects federal employees. It *does not limit the statute's application* to federal employees.

Moreover, the paragraph also ambiguously states that, "[i]n addition, annuities and other payments under Federal programs in which entitlement is based on employment would also be subject to attachment for support and alimony payments." *Id.* The legislative history does not specify whether this last sentence refers only to payments made to federal employees, or to all such payments. Finally, this report also states that the SSA Garnishment provision would "override provisions in various social insurance or retirement statutes which prohibit attachment or garnishment." *Id.* This statement demonstrates that Congress did envision the SSA Garnishment provision as an implied repeal of statutes similar to the LHWCA Anti–Alienation provision. This legislative history can be read to undermine Moyle's claim, not to support it.

Similarly, the amending provisions that revised the SSA Garnishment provision in 1996 and 1997 are both entitled "Authority to Collect Support from *Federal Employees*." Pub.L. No. 105–33, § 5542(a), (b), 111 Stat. 251, 631 (1997); Pub.L. No. 104–193, § 362, 110 Stat. 2105, 2242 (1996) (emphasis added). The legislative history of the 1996 revision also repeatedly refers to federal employees

without mentioning individuals in the private sector. *See* H.R.Rep. No. 104–651, at 1429–30, *reprinted in* 5 U.S.C.C.A.N. 2183, 2488–89 (1996). Describing the version of the SSA Garnishment provision at · issue here, the 1996 House Report states: "Federal law allows the wages of *Federal employees* to be garnished to enforce legal obligations for child support or alimony." *Id.* at 1429 (emphasis added). But the report also continues ambiguously: "Federal law provides that moneys payable by the United States *to any individual* are subject to being garnished in order to meet an individual's legal obligation to provide child support or make alimony payments." . *Id.* (emphasis added). Again, although these sources sometimes discuss the SSA Garnishment provision in terms that suggest that it only applies to federal employees, they do not explicitly limit the statute's application to federal employees, nor do they consider the statute's effect on LHWCA benefits.

Finally, the alleged ambiguity in the SSA Garnishment provision was mentioned in *DeTienne v. DeTienne*, 815 F.Supp. 394 (D.Kan. 1993). The court remarked that the SSA Garnishment provision "appears to refer only to wages due to federal government employees," because the statute "does not mention the garnishment of Social Security disability benefits payable to private-sector employees," *id.* at 396, and because "[t]he federal cases interpreting and applying [the SSA Garnishment provision] primarily have arisen from garnishments of federal employees' wages and salaries." *Id.* at 396 n. 1. But the court did not hold that the SSA Garnishment provision *does not* reach any federal payments made to private individuals, nor did it contemplate the provision's effect on LHWCA benefits in particular. It is .true that the majority of the cases that apply the SSA Garnishment provision concern compensation paid to federal employees.[10] But Moyle does not cite any legislative or judicial authority that states that LHWCA benefits are not subject to the SSA Garnishment provision, nor have we discovered any such authority. Therefore, we reject Moyle's con-

---

**10.** *See, e.g., United States v. Morton,* 467 U.S. 822, 826, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) ("Congress decided that compensation payable to *federal employees,* including members of the

Armed Services, should be subject to legal process to enforce employees obligations to provide child support or make alimony payments.") (emphasis added).

tention that the SSA Garnishment provision only applies to compensation paid to federal employees.

## CONCLUSION

 The plain language of the SSA Garnishment provision and its legislative history demonstrate the legislature's "clear and manifest" intent to repeal the LHWCA Anti–Alienation provision when it enacted the SSA Garnishment provision. These two provisions irreconcilably conflict because the SSA Garnishment provision permits garnishment of LHWCA benefits and the LHWCA Anti–Alienation provision prohibits such garnishment. Therefore, we affirm the Board's summary affirmance of the ALJ decision that concluded that the SSA Garnishment provision impliedly repealed the LHWCA Anti–Alienation provision.[11]

---

11. Moyle has requested an award of attorney's fees. But the LHWCA fee provision, 33 U.S.C. § 928, does not permit an award of attorney's fees against the Special Fund, which is the only entity here that might pay Moyle his fees. *See*

*Director, OWCP v. Robertson,* 625 F.2d 873, 877–78 (9th Cir.1980).