# Relationship Between Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and Statutory Requirement for Confidentiality of Census Information

Section 642(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which concerns the authority of federal, state, and local government officials and entities to disclose to the Immigration and Naturalization Service information regarding an individual's citizenship or immigration status, does not repeal 13 U.S.C. § 9(a), a statutory confidentiality requirement that bars the disclosure of covered census information by census officials.

May 18, 1999

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

You have inquired about the relationship between two federal statutes. The first provision is 13 U.S.C. § 9(a) (1994 & Supp. IV 1998), which sets forth the longstanding requirement that census officials must, with certain express exceptions, keep covered census information confidential. The second provision is section 642(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-707, which now appears as 8 U.S.C. § 1373(a) (Supp. IV 1998), and which concerns the authority of federal, state, and local government officials and entities to disclose to the Immigration and Naturalization Service ("INS") information regarding an individual's citizenship or immigration status. You have asked whether 13 U.S.C. § 9(a) has been partially repealed by 8 U.S.C. § 1373(a).[1] We conclude that it has not.

## I.

It is useful at the outset to describe the two federal statutes that are at issue. We begin by describing the longstanding confidentiality provision that has been codified as 13 U.S.C. § 9(a). We then describe the recently enacted provision that addresses the disclosure of certain information to the INS that now appears as 8 U.S.C. § 1373(a).

Section 9(a) of title 13 represents the most recent codification of a statutory confidentiality requirement that dates back more than a century and that bars the disclosure of covered census information by census officials. *See Baldrige v.*

---

[1] *See* Letter from Andrew J. Pincus, General Counsel, United States Department of Commerce, to Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, United States Department of Justice, *Re: Effect of the Illegal Immigration Reform and Immigrant Responsibility Act on the Confidentiality of Census Information* (May 14, 1999) ("Pincus Letter").

*Shapiro*, 455 U.S. 345, 356–59 (1982) (reviewing the history of the requirement); *Census Data Unavailable to Women's Bureau of Department of Labor and Individuals*, 36 Op. Att'y Gen. 362, 363–66 (1930) (same) ("*Census Data*"). The core of this requirement has remained essentially unchanged since its initial enactment and generally prohibits census officials from disclosing covered information. The provision has been understood, in the absence of clear exceptions, to impose a broad requirement of confidentiality. *See Baldrige*, 455 U.S. at 359 (holding that lists of addresses collected and utilized by the Bureau of the Census are exempt from disclosure by civil discovery or under the Freedom of Information Act); *United States v. Bethlehem Steel Corp.*, 21 F.R.D. 568, 572 (S.D.N.Y. 1958) (barring disclosure to the Department of Justice); *Confidential Treatment of Census Records*, 40 Op. Att'y. Gen. 326 (1944) ("*Census Records*") (subjecting Archivist to statutory confidentiality requirement); *Census Data*, 36 Op. Att'y Gen. 362 (barring disclosure of census information to the Women's Bureau of the Department of Labor and Individuals).

At present, the provision enumerates certain express exceptions to the confidentiality requirement, the most recent of which were added by two amendments that Congress enacted in 1997. One of these amendments added a cross-reference to a contemporaneously enacted provision that permits certain otherwise prohibited disclosures to be made to the Census Monitoring Board. *See* Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 210(k), 111 Stat. 2471, 2487 (1997) (amending the face of 13 U.S.C. § 9(a)); *id*. § 210(e)(3), 111 Stat. at 2485 (permitting disclosure to Census Monitoring Board). The other added a cross-reference to a contemporaneously enacted provision that permits certain otherwise prohibited disclosures to be made to the Department of Agriculture for the purpose of facilitating the agriculture census. *See* Census Agriculture Act of 1997, Pub. L. No. 105-113, § 4(a)(1), 111 Stat. 2274, 2276 (amending the face of 13 U.S.C. § 9(a)); *id*. § 2(f), 111 Stat. at 2275 (permitting disclosure to the Agriculture Department).[2]

The statutory prohibition against the disclosure of census information now codified as 13 U.S.C. § 9(a) not only protects the personal privacy of persons who respond to the census, but also, in doing so, facilitates the administration of the census, which the Constitution commands the federal government to perform every ten years. *See* U.S. Const. art. I, § 2, cl. 3. As the Supreme Court observed in *Baldrige*, "[a]lthough Congress has broad power to require individuals to submit responses, an accurate census depends in large part on public cooperation. To stimulate that cooperation Congress has provided assurances that information

---

[2] Congress did not reenact the substantive confidentiality requirement itself, however, in amending the provision to include these express exceptions.

furnished to the Secretary [of Commerce] by individuals is to be treated as confidential." 455 U.S. at 354. Not surprisingly, therefore, federal law provides that census officials who violate the terms of the statutory confidentiality requirement may be subject to criminal prosecution for the commission of a felony, and, upon conviction, may face a maximum prison term of five years. *See* 13 U.S.C. § 214 (1994).

The text of section 9(a) provides:

> (a) Neither the Secretary, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, or local government census liaison, may, except as provided in section 8 or 16 or chapter 10 of this title or section 2(f) of the Census of Agriculture Act of 1997 or section 210 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998—
>
> > (1) use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied; or
> >
> > (2) make any publication whereby the data furnished by any particular establishment or individual under this title can be identified; or
> >
> > (3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.
>
> No department, bureau, agency, officer, or employee of the Government, except the Secretary in carrying out the purposes of this title, shall require, for any reason, copies of census reports which have been retained by any such establishment or individual. Copies of census reports which have been so retained shall be immune from legal process, and shall not, without the consent of the individual or establishment concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding.[3]

---

[3] Subsection (b) sets forth an additional, express exception to the limited ones that are contained in the body of subsection (a). This provision is not at issue in this matter. The subsection provides:

> (b) The provisions of subsection (a) of this section relating to the confidential treatment of data for particular individuals and establishments, shall not apply to the cen-

In contrast to 13 U.S.C. § 9(a), section 1373(a) of title 8, entitled "Communication between Government agencies and the Immigration and Naturalization Service," is a recent enactment, and there is little in the way of legislative history that illuminates its scope. Congress adopted the provision in the course of passing IIRIRA in 1996, well after 13 U.S.C. § 9(a) had been enacted but just prior to the enactment of the recent amendments to 13 U.S.C. § 9(a) described above. The limitation was originally set forth as section 642(a) of IIRIRA and is codified as section 1373(a) of title 8.

The text of section 1373(a) provides:

> (a) In general
>
> Notwithstanding any other provisions of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

Subsection (b) places an additional limitation on attempts to restrict a federal, state, or local government "entity" from making certain uses of information regarding the immigration status, lawful or unlawful, of any individual. Subsection (b) provides:

> (b) Additional authority of Government entities
>
> Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:
>
>> (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
>>
>> (2) Maintaining such information.

---

suses of governments provided for by subchapter III of chapter 5 of this title, nor to interim current data provided for by subchapter IV of chapter 5 of this title as to the subjects covered by censuses of governments, with respect to any information obtained therefor that is compiled from, or customarily provided in, public records.

(3) Exchanging such information with any other Federal, State, or local government entity.[4]

## II.

The question that we must resolve concerns the relationship between these two federal statutes, one of which sets forth a longstanding bar to the disclosure of sensitive information by census officials that may be enforced with criminal penalties, and the other of which sets forth a limitation intended to facilitate the disclosure of certain information to the INS.

We begin with the text of the statute that might be construed to have effected a repeal of prior law. We are mindful in doing so that "repeals by implication are not favored," *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168 (1976); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("When two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective"), and that it is "[a] long-standing maxim of statutory construction that statutes are enacted in accord with the legislative policy embodied in prior statutes, and that therefore statutes dealing with the same subject should be construed together." Memorandum for Glen E. Pommerening, Assistant Attorney General for Administration, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, *Re: Establishing a Maximum Entry Age Limit for Law Enforcement Officer Positions in the Department of Justice* at 3 (Apr. 3, 1975).

Here, by virtue of its more recent enactment, and notwithstanding the 1997 amendments to 13 U.S.C. § 9(a), the potential repealer is 8 U.S.C. § 1373(a), the text of which provides that federal, state, or local governmental "entit[ies]" or "official[s]" may not "prohibit, or in any way restrict," certain types of disclosures to federal, state, or local government entities or officials. In our view, the text of section 1373(a) does not manifest the kind of clear congressional intention that is ordinarily required to effect the repeal of a federal statute such as 13 U.S.C. § 9(a). Indeed, if anything, the statutory text suggests that Congress did not intend to repeal existing, federal statutory prohibitions or restrictions on disclosure.

There would be nothing impermissible about a federal statute that took the form of a repeal of prior federal statutory disclosure prohibitions or restrictions. The

---

[4] Subsection (c) of section 1373 imposes a duty upon the INS to respond to certain requests for information about the citizenship or immigration status of individuals that it receives from governmental agencies. That portion of the provision is not at issue here. It provides:

(c) Obligation to respond to inquiries

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

question, here, however, is whether 8 U.S.C. § 1373(a) is such a federal statute, and textual evidence suggests that it is not. There is a straightforward way in which 8 U.S.C. § 1373(a) might have been drafted to repeal federal statutes prohibiting or restricting disclosure and to establish an interpretive background for future federal statutes that would favor disclosure: "Notwithstanding any provision of law, a federal, state, or local official or entity may provide information, without restriction . . . ." In contrast, the terms of section 1373(a) do not clearly invest governmental officials or entities with the affirmative authority to disclose information in circumstances where they otherwise would be prohibited from doing so by a federal statute. Rather, the provision is phrased as a limitation on the authority of government entities or officials to impose prohibitions or restrictions on disclosures by government entities or officials. The phrasing therefore requires that we determine, in order to discern the scope of the provision, the government "entities" to which Congress has directed this bar. A consideration of that question, in turn, reveals the problem with construing section 1373(a) to supersede federal statutory prohibitions or restrictions on the disclosure of information.

One could read the text of section 1373(a) to supersede federal statutory prohibitions or restrictions on disclosure by concluding that the phrase "a Federal, State, or local government entity or official may not prohibit, or in any way restrict" includes within its terms the United States Congress acting pursuant to its lawmaking authority in the same way that it would include within its terms states or local governments acting pursuant to their lawmaking authority. Such a construction would be at odds, however, with the fact that Congress may not, by statute, direct the Congress not to enact certain laws in the future. *See, e.g.*, *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 135 (1810) (Marshall, C.J.) ("The principle asserted is that one legislature . . . cannot abridge the powers of a succeeding legislature. The correctness of this principle, so far as respects general legislation, can never be controverted."). That is not to say, of course, that Congress may not enact a statutory prohibition that Congress could lift only by subsequently repealing it. It is rather to say that Congress has no power to command itself by statute not to enact a law in the future, and thus that it would be odd to construe the command contained in section 1373(a) to have been intended to apply to Congress's own power to enact prohibitions or restrictions on disclosure. It would appear from the text, therefore, that the provision is intended to constrain the lawmaking discretion of *other* government officials and entities but not of the very governmental entity that is constitutionally vested with the lawmaking power of the federal government.

It is not possible, moreover, to construe section 1373(a) as if it were intended to apply only to federal statutory disclosure prohibitions or restrictions that had been enacted *prior* to the passage of section 1373(a). Such a construction would avoid the problem that we have just mentioned, but only by giving rise to a new one. It would be quite strange to conclude that Congress intended for section 1373(a) to

apply *only* retroactively as a general matter, and the statutory text simply does not permit the provision to be construed to apply both prospectively and retroactively to state and local laws, but only retroactively to federal statutes.

We also do not believe that it would make sense to construe section 1373(a) as if it were intended to preclude federal officials or entities from implementing, through, for example, criminal prosecutions or disciplinary actions, federal statutory prohibitions or restrictions against disclosure. Such an interpretation would require one to make the dubious assumption that Congress intended to preclude federal officials from implementing statutory prohibitions or restrictions against disclosure that it had not seen fit to repeal.

These interpretive oddities do not arise if the text is construed to apply only to disclosure prohibitions or restrictions other than those imposed by federal statute. For example, section 1373(a) may be comfortably construed to displace conflicting state or local non-disclosure laws, even if they have been enacted by statute or ordinance[5]; state and local governments must legislate in this area in accord with federal law, *City of New York v. United States*, 971 F. Supp. 789 (S.D.N.Y. 1997) (rejecting a Tenth Amendment challenge to the application of section 1373(a) to preempt a city executive order prohibiting city officials from disclosing certain information to the INS), and the rule that Congress may not bind its future lawmaking power is obviously not implicated by a federal statute that has such preemptive effect. Section 1373(a) also may be comfortably construed to limit the discretionary authority of federal officers or employees, or federal entities like administrative agencies, to adopt disclosure prohibitions or restrictions; federal officials or entities generally may exercise discretionary authority of this sort only to the extent that Congress allows by statute. The ease with which the provision may be read to cover these applications stands in marked contrast to the struggle that would be required to read the provision to cover federal statutory prohibitions or restrictions on disclosure.

To be sure, the presence of the prefatory phrase "notwithstanding any other provisions of Federal, State, or local law" does reflect a congressional intention to displace inconsistent law. It does not, however, support a broad construction of the substantive provision that would give rise to such inconsistencies. *See Moyle v. Director, Office of Worker's Comp. Programs*, 147 F.3d 1116, 1119 (9th Cir. 1998) ("The fact that [a statute] provides that it is effective '[no]twithstanding any other provision of law' also does not evidence an express repeal of [the other] statute."); *Kee Leasing Co. v. McGahan*, 944 F.2d 577, 582 (9th Cir. 1991) ("notwithstanding" phrase by itself did not in and of itself indicate a congressional intent to repeal other statute). The "notwithstanding" phrase merely prefaces the

---

[5] *See infra* note 7.

substantive limitation that section 1373(a) sets forth, and, as we have explained, the text of section 1373(a) suggests that this substantive limitation does not apply if Congress is the source of the prohibition or restriction in question. The limitation appears instead to be intended to apply only when the source of the prohibition or restriction on disclosure is an entity or official other than Congress. The "notwithstanding" phrase is thus best read to mean only that, notwithstanding a federal statute that would authorize federal officials or entities to exercise their general administrative discretion in a manner that would prohibit or restrict disclosures of the type identified in section 1373(a), such federal officials or entities may not exercise such discretion. The phrase should not be understood to refer, therefore, to federal statutes that themselves prohibit or restrict such disclosures.[6]

Nor do the terms of the title of subsection (b) of section 1373 of title 8, which employs similar language to subsection (a), reflect a congressional intention to cover federal statutory prohibitions or restrictions on disclosure. The subsection is entitled "Additional Authority of Governmental entities." This language should not be read to suggest that Congress intended for the text of both subsections to authorize governmental entities or officials to make disclosures in contravention of otherwise applicable federal statutes. Section 1373 confers "additional authority" on state and local governmental entities to the extent that it preempts state or local disclosure prohibitions that would otherwise apply to them. Thus, even if the title to subsection (b) should be given interpretive weight, its terms are consistent with the construction of the text of section 1373(a) that we have set forth above.[7]

---

[6] Questions may arise in some circumstances as to whether a federal statute constitutes a prohibition or restriction on disclosure or merely confers general administrative authority upon subordinate officials or entities that would enable them to determine in their discretion whether to adopt such prohibitions or restrictions. We have no need to address such questions here, however, because there is no question that 13 U.S.C. § 9(a) constitutes a federal statutory bar against disclosure.

[7] In concluding that the text of section 1373(a) should not be understood to repeal federal statutory prohibitions or restrictions on disclosure, we express no view as to whether other limitations on the scope of the provision may also be warranted by either its text or its purposes. We note, however, that, although, as we explain below, the legislative history comports with our conclusion that Congress did not intend section 1373(a) to supersede legislatively enacted *federal* prohibitions or restrictions on disclosure, the legislative history also suggests that Congress intended to supersede state and local prohibitions or restrictions on disclosure without regard to whether such prohibitions or restrictions had been enacted legislatively or adopted pursuant to the exercise of administrative discretion. *See* H.R. Rep. No. 104-469, pt. 1, at 277 (1996) (explaining that the House version of the measure "is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS"). Thus, the legislative history casts doubt upon a construction of section 1373(a) that would leave in place *all* legislatively enacted prohibitions or restrictions on disclosure, including state and local ones.

## III.

The remaining evidence of congressional intent supports the inference that the text invites: that 8 U.S.C. § 1373(a) does not repeal federal statutory prohibitions or restrictions on disclosure to the INS of information concerning an individual's citizenship or immigration status.

As an initial matter, Congress amended the version of 13 U.S.C. § 9(a) that predated the enactment of section 1373(a) *after* section 1373(a) had been enacted. The amendments, as we have already explained, added two express exceptions to the confidentiality requirement for census information that 13 U.S.C. § 9(a) had previously set forth. This recent history of express amendment is consistent with Congress's past practice of expressly identifying the relationship between the confidentiality requirement that 13 U.S.C. § 9(a) sets forth and other federal statutes. *See, e.g.*, 42 U.S.C. § 11608 (1994) (setting forth the manner in which otherwise confidential covered census information may be disclosed to implement a certain treaty); 42 U.S.C. § 6274 (1994) (specifically abrogating protections conferred by section 9 of title 13 to implement a different statutory policy); 50 U.S.C. app. § 2411 (1994) (providing express exemption for covered census information from general disclosure requirement); *see* Pincus Letter at 1 (noting that "the few statutory exceptions to this requirement are explicit and limited"). Because "this particular problem of statutory construction arises in a context in which Congress has historically legislated with care and specificity," *Exchange Authority for Kaloko Honokohau National Historical Park*, 6 Op. O.L.C. 251, 255 (1982), the absence of a reference in either statute to the other suggests that the text of 13 U.S.C. § 9(a) should be construed to mean just what it says, and that 8 U.S.C. § 1373(a) should be understood to have left in place the confidentiality requirement that 13 U.S.C. § 9(a) establishes.[8]

The fact that neither statutory provision refers to the other is also significant because it has long been assumed that, if Congress were to cut back on the confidentiality provision set forth in 13 U.S.C. § 9(a), it would do so clearly. In rejecting a request by the United States Department of Justice that census officials be ordered to disclose census information relevant to an investigation, Judge

---

[8] Shortly after section 642(a) of IIRIRA had been enacted, the Department of Justice submitted a legislative proposal to Congress that contained various technical amendments to IIRIRA and that would have expressly provided that section 642(a) did not repeal 13 U.S.C. § 9(a). See Letter for Newt Gingrich, Speaker, United States House of Representatives, from Andrew Fois, Assistant Attorney General, Office of Legislative Affairs (July 3, 1997), with attached legislative proposal entitled "Technical Immigration and Naturalization Amendments of 1997." The fact that Congress did not enact this legislative proposal into law does not, of course, suffice to indicate that Congress intended for section 642(a) to repeal a portion of the confidentiality requirement set forth in 13 U.S.C. § 9(a). *See Helvering v. Hallock*, 309 U.S. 106, 121 (1940) (Frankfurter, J.) ("[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.").

Weinfeld explained that "the purpose to protect the privacy of the information furnished to the Government is so clear and the public policy underlying the purpose so compelling that, absent a clear Congressional grant, there is no basis upon which to direct the Department of Commerce to make available to the Department of Justice or to any person the reports here sought." *Bethlehem Steel*, 21 F.R.D. at 572. The Attorney General employed a similar requirement of clarity in determining that a statute that granted custody of federal records to the Archivist did not displace the confidentiality requirement set forth in a predecessor to 13 U.S.C. § 9(a).

> The policy of insuring by legislative and executive action that no unauthorized use is made of information obtained in the census, and the compelling reasons therefor, are set forth in the Attorney General's opinion of September 29, 1930, to the Secretary of Commerce. It would require very clear language in a general statute relating to the custody of records to justify attributing to the Congress an intention to depart from its policy, and there is no such clear indication in the Archives Act.

*Census Records*, 40 Op. Att'y Gen. at 327–28.[9]

The presumption employed in these cases arises from the important governmental interests that first prompted the enactment of a statutory requirement of confidentiality. Indeed, the Supreme Court emphasized the long history of this statutory requirement, and the important role that it plays in encouraging the public to cooperate with census officials, in the course of holding that Congress, in enacting the Freedom of Information Act or conferring authority on federal district courts to order the discovery of non-privileged information, could not have intended to override the requirement in a manner that would permit the disclosure of the lists of addresses that had been collected and utilized by the Bureau of the Census. *See Baldrige*, 455 U.S. at 356–62. The Attorney General also emphasized the important function that the confidentiality requirement performs in describing a nearly identical predecessor to the current, non-disclosure requirement: "There can be no doubt that the Congress intended in the act of June 18, 1929 . . . to give effective assurance to all persons required under penalty of law to furnish

---

[9] The Supreme Court's decision in *St. Regis Paper Co. v. United States*, 368 U.S. 208 (1962), is not to the contrary. In that case, the Court held that the Federal Trade Commission was entitled to order a private corporation to submit certain census-related information that it had maintained, but the Court did so on the basis of a determination that 13 U.S.C. § 9(a) imposes a confidentiality requirement that applies to government officials and not private persons or entities. *See St. Regis Paper Co.*, 368 U.S. at 217–18. The question before us, by contrast, concerns whether the recent enactment of 8 U.S.C. § 1373(a) makes permissible the disclosure of census information by government officials who would otherwise be subject to the confidentiality requirement that 13 U.S.C. § 9(a) imposes.

information to the Bureau of the Census for statistical purposes, that the identity of the informant and the information furnished would be held in complete confidence by the Bureau." *Seventeenth Decennial Census*, 41 Op. Att'y Gen. 120, 124 (1953); *see also Bethlehem Steel Corp.*, 21 F.R.D. at 570–71 (explaining that a "purpose [of the requirement] was to encourage citizens to submit freely all data desired in recognition of its importance in the enactment of laws and other purposes in the national interests").

The confidentiality provision to which the Attorney General referred was itself pre-dated by section 25 of the Act of July 2, 1909, ch. 2, 36 Stat. 1, 9, which set forth the non-disclosure requirement in similar terms to the current requirement. The congressional committee that reported the bill that became the Act of July 2, 1909, explained that the provision was intended to secure "a more effective guaranty than heretofore of the confidential character of the returns as needed in many cases and desirable in all to enlist that public confidence without which census inquiries must fail." H.R. Rep. No. 60-960, at 23 (1908).

In addition, soon after the enactment of the 1929 statute, Act of June 18, 1929, ch. 46, 28 Stat. 21, 25, and consistent with its broad purpose, President Herbert Hoover assured the public by proclamation of November 22, 1929, that the statutory provisions barring the disclosure of census information made clear that

> [t]he sole purpose of the Census is to secure general statistical information regarding the population and resources of the country, and replies are required from individuals only to permit the compilation of such general statistics. No person can be harmed in any way by furnishing the information required. The Census has nothing to do with taxation, with military or jury service, with the compulsion of school attendance, with the regulation of immigration, or with the enforcement of any national, state, or local law or ordinance. There need be no fear that any disclosure will be made regarding any individual person or his affairs. For the due protection of the rights and interests of the persons furnishing information every employee of the Census Bureau is prohibited, under heavy penalty, from disclosing any information which may thus come to his knowledge.

Proclamation No. 1898 (1929).

In light of the federal government's longstanding commitment to confidentiality in this area, there is every reason to expect that Congress would have spoken with particular clarity if it had intended to cut back on the scope of 13 U.S.C. § 9(a) in enacting 8 U.S.C. § 1373(a). The plain terms of 13 U.S.C. § 9(a) certainly make clear the nature of this federal governmental commitment to confidentiality, as they render covered census information immune from legal process. A broad construction of 8 U.S.C. § 1373(a), however, would permit

census officials to disclose to INS employees otherwise protected census information even in the absence of a court order requiring them to do so. It is unlikely that, in light of past practice, Congress would have adopted such a significant limitation on the scope of the census confidentiality requirement without either referring to it expressly in 8 U.S.C. § 1373(a) or an amendment to 13 U.S.C. § 9(a), or, at the least, using more direct language than it has employed here.

Finally, the discussion in the legislative reports that directly concerns 8 U.S.C. § 1373(a) accords with the conclusion that Congress did not intend to effect the repeal of federal statutory prohibitions or restrictions such as 13 U.S.C. § 9(a). The conference report to IIRIRA, for example, states that section 642(a), which now appears as 8 U.S.C. § 1373(a), "provides that notwithstanding any other provision of Federal, State, or local law, no State or local government entity shall prohibit or in any way restrict any government entity or official from sending to or receiving from the INS information regarding the immigration status of any individual in the United States." H.R. Rep. No. 104-828, at 249 (1996) (Conf. Rep.). The report's failure to refer to prohibitions or restrictions by federal government entities may have been the result of an oversight, but the omission nonetheless makes it difficult to discern from the conference report a congressional intention to repeal federal statutory prohibitions or restrictions against disclosure, such as the one contained in 13 U.S.C. § 9(a).

In addition, the Senate report appears to be focused on state and local disclosure prohibitions and restrictions. Although the report provides that the provision that would later become section 642(a) "[p]rohibits any restriction on the exchange of information between the Immigration and Naturalization Service and any Federal, State, or local agency regarding a person's immigration status," S. Rep. No. 104-249, at 19 (1996), the next two sentences suggest that Congress was concerned with state and local restrictions, not federal statutory ones: "Effective immigration law enforcement requires a cooperative effort between all levels of government. The acquisition, maintenance, and exchange of immigration-related information by State and local agencies is consistent with, and of potentially considerable assistance to, the Federal regulation of immigration and the achieving of the purposes and objectives of the Immigration and Nationality Act." *Id*. at 19–20.

The House report also fails to provide support for construing 8 U.S.C. § 1373(a) to effect the repeal of federal statutory prohibitions or restrictions on disclosure. Indeed, at the time of the report, the bill applied only to state and local prohibitions or restrictions on disclosure, not federal ones. H.R. Rep. No. 104-469, pt. 1, at 104 (1996). To the extent that the report may be understood to shed any light on the kind of prohibitions or restrictions on disclosure that Congress had in mind in enacting section 642(a), moreover, it suggests that a narrow construction is appropriate. The report states, for example, that "[t]he Committee believes that immigration law enforcement is as high a priority as other aspects of Federal law

enforcement, and that illegal aliens do not have the right to remain in the U.S. undetected and unapprehended." H.R. Rep. No. 104-469, pt. 1, at 277. The report appears to suggest, therefore, that Congress intended to ensure that the INS would not be placed at a comparative disadvantage in performing its law enforcement responsibilities. If section 1373(a) were construed to repeal the applicable portion of 13 U.S.C. § 9(a), however, the INS would be capable of obtaining census information relevant to its law enforcement mission even though other federal agencies would not. The report provides no support for a construction of section 1373(a) that would have the consequence of thus privileging the INS.[10]

## V.

For the reasons set forth above, we conclude that 8 U.S.C. § 1373(a) does not repeal 13 U.S.C. § 9(a).

RANDOLPH D. MOSS
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[10] This evidence from the legislative history may suggest that 8 U.S.C. § 1373(a) is not intended to apply to any provision of law, whether federal, state, or local, that imposes a confidentiality requirement that applies to bar disclosures not simply to the INS, but to government agencies generally. We do not address here, however, whether such a distinction between types of confidentiality requirements would be compatible with the text of 8 U.S.C. § 1373(a). *Cf. Emp't Div. v. Smith*, 494 U.S. 872, 878 (1990) (interpreting the word "prohibiting" in the Free Exercise Clause to incorporate an implicit distinction between direct and indirect prohibitions). We do note that while it is clear that Congress intended for 8 U.S.C. § 1373(a) to displace state or local provisions that specifically targeted disclosures to the INS for special prohibition, *see City of New York v. United States*, 971 F. Supp. 789, 792 (S.D.N.Y. 1997), the federal statutory bar to disclosure that is set forth in 13 U.S.C. § 9(a) is not similarly targeted. It applies without regard to whether the information to be protected concerns an individual's citizenship or immigration status or whether the disclosure is to be made to the INS or some other law enforcement agency.