J-A29021-14

2014 PA Super 251

BETTY UVEGES,

     Appellee

      v.

SAMUEL L. UVEGES

     Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 259 WDA 2014

Appeal from the Order entered January 21, 2014,
in the Court of Common Pleas of Greene County,
Civil Division, at No(s): A.D. No. 1333, 2009

BEFORE: BOWES, ALLEN, and STRASSBURGER,* JJ.

OPINION BY ALLEN, J.:       **FILED NOVEMBER 05, 2014**

In this appeal, we decide whether Betty Uveges ("Wife") may attach the disability benefits of Samuel L. Uveges ("Husband"), pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq*. We affirm the trial court's determination that Husband's disability benefits may be attached to pay Husband's alimony obligation.

The trial court summarized the pertinent facts and procedural history as follows:

> [The parties] were married on June 3, 1972, in Greene County, Pennsylvania. A divorce complaint was filed December 10, 2009. On January 21, 2010, [the parties] entered into an Agreement that expressed the "desire and

*Retired Senior Judge assigned to Superior Court.

intention of the parties . . . to amicably adjust, compromise and settle all property rights, and all rights in and to or against the property or estate of the other . . . and to settle all disputes existing between them." According to Paragraph 6 of the Agreement, Husband would pay to Wife the sum [of] $2,500.00 per month for permanent alimony, modifiable only by remarriage, cohabitation, or the receipt by Wife of social security disability payments. The divorce became final on August 1, 2011.

On February 15, 2012, Wife filed a petition to enforce the agreement alleging Husband's failure to make any of the required alimony payments after January 1, 2012. Following a hearing, we entered an order on April 10, 2012, which among other things provided for the attachment of Husband's monthly benefits under the [LHWCA]. We also found Husband in contempt and issued a bench warrant.

On May 4, 2012, a petition for special relief was filed by Consolidated Coal Company [("Consol")], Husband's previous employer, which claimed that benefits payable to beneficiaries under the [LHWCA] are exempt from attachment. On October 26, 2012, we entered another order providing for other means of enforcement, such as attachment of Husband's UMWA pension benefits and social security benefits. We also entered an award for counsel fees. Part of the order vacated the portion of the April 10, 2012 order that called for attachment of Husband's [LHWCA] benefits. On May 10, 2013, we entered yet another enforcement order authorizing the transfer to Wife of certain real property awarded to Husband by the Agreement.

On September 27, 2013, represented by new counsel, Wife filed another motion for contempt, again asking for attachment of Husband's [LHWCA] benefits. We scheduled a hearing for December 2, 2013, after which we requested briefs. After review of those briefs and after consideration of the applicable law, we concluded on January 15, 2014 that the law permits an ex-spouse in Wife's position to attach the [LHWCA] retirement or disability benefits of an ex-husband who has been found to be in contempt. Husband appealed and filed a [Pa.R.A.P. 1925(b)]

- 2 -

> Statement complaining of our ruling that his [LHWCA] benefits were subject to attachment.

Trial Court Opinion, 3/24/14, at 1-3.

On January 21, 2014, the trial court entered a second order which provided:

> 1. The Court finds that [Husband] owes an arrearage of $56,912.80 for back Alimony payments due as of the date of this Order.
>
> 2. The Court further awards [Wife] $15,000.00 in total attorney's fees due as of the date of this Order.
>
> 3. An attachment of [Husband's] income is hereby issued such that the sum of $2,000.00 per month shall be deducted and withheld from [Husband's] monthly [benefits] awarded to [Husband] pursuant to the [LHWCA]. This amount shall increase by 50% of any future increases in [Husband's] award. This represents $2,500.00 [sic] a month for ongoing alimony and the remainder to be paid towards arrearages and [Wife's] attorney's fees.
>
> 4. The attachments of [Husband's] UMWA Benefits and Social Security Benefits are to continue in the amounts of $471.75 and $517.80 respectively towards [Husband's] arrearages and [Wife's] attorney's fees.

Order, 1/21/14, at 1. This timely appeal followed.[1] Both Husband and the trial court have complied with Pa.R.A.P. 1925.[2]

_____

[1] In his notice of appeal, Husband asserts that he is appealing from the trial court's orders entered on January 15, 2014 and January 21, 2014. Because we consider the former order interlocutory, we consider Husband's appeal to be from the January 21, 2014 order. We have amended the caption accordingly.

[2] Subsequently, Consol filed a complaint for interpleader with the federal district court, as well as a motion to deposit funds in the amount of
*(Footnote Continued Next Page)*

Husband raises the following issues:

> [I.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW IN ORDERING THAT ANY OR ALL OF [HUSBAND'S] MONTHLY INDEMNITY BENEFITS PAYABLE UNDER AND PURSUANT TO THE DICTATES OF THE [LHWCA] IS SUBJECT TO ATTACHMENT, WHEN SAME IS SPECIFICALLY PRECLUDED PURSUANT TO 33 U.S.C. § 916?
>
> [II.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW IN ORDERING THAT IT WOULD ENTER A MOTION AND PROPOSED ORDER FOR ATTACHMENT OF THE BENEFITS PAYABLE TO [HUSBAND] PURSUANT TO THE TERMS OF THE [LHWCA]?

Husband's Brief at 3. Because both of these issues challenge the trial court's conclusion that Husband's LHWCA benefits may be attached to pay alimony, we address them together.

Husband argues that there is no exception to the LHWCA's anti-alienation clause that would permit Wife to attach his benefits in order to recover alimony. Citing **Thibodeaux v. Thibodeaux**, 454 So.2d 813 (La. 1984), Husband argues that Wife cannot attach his LHWCA benefits "since it was Congress' intent that the benefits should go to the disabled worker

*(Footnote Continued)* _____

$72,912.80, representing $56,912.80 in alimony and $15,000.00 in attorney's fees. Deciding that it should allow the Superior Court to determine the legal question of attachment, the federal court caused the case to be marked administratively closed. It further ordered that the parties "may petition this Court for disbursement of funds once a final ruling is issued by the Courts of the Commonwealth of Pennsylvania as to whether [Husband's] [LHWCA] benefits may be attached." **See generally**, **Consolidated Coal Co. v. Uveges**, 2014 U.S. Dist. LEXIS 93320, filed July 9, 2014.

directly, without any attachment, as per Section 16." Husband's Brief at 8. According to Husband, "[a]pplying the supremacy clause, the [Louisiana Supreme Court in ***Thibodeaux***] reasoned that to allow a wife to garnish these benefits would have required carving out a jurisprudential exception to Congress' anti-attachment clause, which the strong language of the [LHWCA] does not permit." ***Id.***

"The LHWCA was enacted by Congress to provide workers' compensation benefits to persons injured in the course of maritime employment." ***Thibodeaux***, 454 So.2d at 813. "Maritime employers are liable for and must ensure the payments as compensation for disability are made to the employee periodically, promptly and directly, and employers that are not qualified self-insurers must secure these payments by insurance with a carrier approved by the Secretary of Labor." ***Id.*** (footnotes omitted). The payments are protected by the anti-attachment clause of the LHWCA, which reads as follows:

> § 916. Assignment and exemption from claims of creditors
>
> No assignment, release, or commutation of compensation or benefits due or payable under this Act, except as provided by this Act, shall be valid, and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

33 U.S.C. § 916. The applicability of this clause of the LHWCA is one of first impression in Pennsylvania.

In concluding that Husband's LHWCA benefits could be attached, the trial court "decline[d] to accept the rationale of [**Thibodeaux**, **supra**]." Trial Court Opinion, 3/24/14, at 4. Instead, the trial court cited this Court's decision in **Parker v. Parker**, 484 A.2d 168 (Pa. Super. 1984). In **Parker**, we concluded that a similarly worded anti-attachment clause in the statute governing the husband's service-connected disability Veterans' Administration benefits did not preclude the trial court from considering those monthly payments as a source of income for alimony *pendente lite* purposes. This Court noted that the purpose of the anti-attachment clause was "to protect the recipient of the benefits from claims of creditors, and to afford some degree of security to the recipient's family and dependants." **Parker**, 484 A.2d at 169 (citations omitted). Given this purpose, we concluded that the anti-attachment clause did not apply "since a wife seeking to recover alimony pendente lite is not a 'creditor' of her husband, the claim not being based on a debt." **Id.**

The trial court then cited with approval the federal Ninth Circuit decision in **Moyle v. Director, Office of Workers' Compensation Programs**, 147 F.2d 1116 (9th Cir. 1998), *certiorari denied*, 1999 U.S. LEXIS 2578 (1999), in support of its conclusion that Husband's LHWCA benefits may be attached for the collection of alimony. In **Moyle**, the recipient of benefits under the LHWCA appealed from a decision of an Administrative Law Judge ("ALJ") which concluded that the disability benefits could be garnished to satisfy the recipient's delinquent spousal support

obligation. In affirming the ALJ's decision, the Circuit Court agreed with the ALJ's determination that the later-enacted Social Security Statute, 42 U.S.C. § 659 ("SSA Garnishment provision"), impliedly repealed section 916 of the LHWCA, and permitted garnishment.

Enacted in 1975,[3] the relevant part of the SSA Garnishment provision reads as follows:

> Notwithstanding any other provision of law . . . moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, . . . to any . . . legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

*Moyle*, 147 F.3d at 1119 (quoting 42 U.S.C. § 659(a)). The *Moyle* court further noted the ALJ's acknowledgement that "the Office of Personnel Management promulgated a regulation that expressly provides that LHWCA benefits are subject to garnishment pursuant to the SSA Garnishment provision." *Id.* (citing 5 C.F.R. § 581.103(c)(5)).

---

[3] The LHWCA was enacted in 1927. *See Moyle*, 147 F.3d at 1118 n.2.

- 7 -

Here, the trial court, accepting the above rationale, concluded, "Husband's benefits under [the LHWCA] are remuneration for employment and are therefore available for attachment to provide for the support of his dependants. That support is not money owed to a 'creditor' nor is it a 'debt' within the meaning of the [LHWCA]." Trial Court Opinion, 3/24/14, at 4.

Husband asserts that the trial court's reliance upon **Moyle** is inapposite, because the recipient of LHWCA benefits in that case received them from a "Special Fund" established by the LHWCA. **See** Husband's Brief at 9. According to Husband, "a distinction must be drawn between compensation benefits payable **by an employer/carrier and compensation benefits payable by the [Special] Fund**. Only the latter benefits would be subject to garnishment; there are currently no published cases on this issue." Husband's Brief at 9-10.

A close reading of **Moyle** refutes Husband's claim. The Ninth Circuit in **Moyle** found the LHWCA disability benefits could be considered as "remuneration for employment," because the SSA Garnishment provision defines that term to include "workers' compensation benefits paid or payable under Federal or State law[.]" **Moyle**, 147 F.3d at 1120 (quoting 42 U.S.C. § 659(h)(A)(iii)). Thus, in this case, because Husband's workers' compensation payments are made pursuant to federal law, they may be attached in order to meet his alimony obligation.

Moreover, as explained in **Moyle**, "[s]ection 908(f) of the LHWCA limits an employer's workers compensation liability to the first two years of

- 8 -

permanent disability, with subsequent compensation coming from the Special Fund." *Moyle*, 147 F.3d at 1118, n.1 (citing 33 U.S.C. § 908(f)(2)(A). "The Special Fund is financed by a yearly assessment on certain maritime businesses." *Id.* (citing 33 U.S.C. § 944(c)). Although the Treasurer of the United States is the custodian of the Special Fund, *Moyle*, 147 F.3d at 1122, and administers the Special Fund, it is funded by the private employers.[4] Moreover, subsequent case law has made no such distinction when discussing the attachment of LHWCA benefits to satisfy the recipient's support obligations. *See infra*.

Finally, in several contexts, Pennsylvania precedent has recognized that a spouse's alimony and/or support obligations are not "debts." *Parker*, *supra*. *See also Hogg v. Hogg*, 816 A.2d 314, 318-19 (Pa. Super. 2003) (acknowledging that the federal bankruptcy code traditionally "has protected non-debtor spouses and children by precluding discharge of a debtor spouse's alimony and support obligations"); *Buccino v. Buccino*, 580 A.2d 13, 14 (Pa. Super. 1990).

There is support in case law from other states for the trial court's conclusion that Wife is not a "creditor" and support or alimony allegations

---

[4] Husband's attempt to distinguish *Parker*, *supra*, is also inapt. We cannot agree with Husband that the benefits being paid by the Veterans' Administration "is akin to the Special/Trust Fund under 33 U.S.C. § 908(f)." Husband's Brief at 10. Husband provides no support for this analogy.

are not a "debt" under the LHWCA. *See*, *e.g.*, *Cigna Property & Casualty v. Ruiz*, 834 So.2d 234, 236 (Fla. 3rd DCA 2002), *review denied,* 846 So. 2d 1147 (Fla. 2003), *certiorari denied*, 2013 U.S. LEXIS 7728 (2003) (concluding that section 916 of the LHWCA applied only to "claims of creditors" or attachment or execution for "collection of a debt" and then concluding that, under Florida law, a child support obligation is "not a debt"). In *Ruiz*, the Florida court further distinguished the holdings of cases such as *Thibodeaux*, *supra*, because such cases were decided prior to the 1996 amendment to the non-alienation provisions of the Social Security Act, which, pursuant to *Moyle*, *supra*, "has been held to have impliedly repealed the non-alienation provision of the LHWCA with regard to delinquent support obligations." *Ruiz*, 834 So.2d at 236, n.2. *See also Cigna Property & Casualty v. Ruiz*, 254 F.Supp.2d 1262; 2003 U.S. Dist. LEXIS 4673 (dismissing without prejudice insurance carrier's interpleader action regarding attachment of LHWCA benefits, in light of state court's decision in *Ruiz*, *supra*).

In sum, because Husband's LHWCA benefits are paid to him pursuant to federal law, and because Wife is not a "creditor" and Husband's alimony obligation is not a "debt" under 33 U.S.C. section 916, the LHWCA benefits may be attached. Additionally, we note our decision today is consistent with the historical treatment by Pennsylvania appellate courts of anti-attachment clauses vis-à-vis a claim for support or alimony. *See*, *e.g.*, *Hollman v. Hollman*, 528 A.2d 146, 148-49 (Pa. 1987) (concluding that a trial court

could attach a husband's pension, which was established under the Employee Income Security Act of 1974, 29 U.S.C.A. §§ 1001, *et seq.* ("ERISA"), to satisfy arrearages on spousal support payments, despite statutory anti-attachment provisions); ***Com. ex rel Magrini v. Magrini***, 398 A.2d 179, 181-83 (Pa. 1979) (holding that a trial court could attach husband's pension to satisfy arrearages on spousal support obligations despite state statutory anti-attachment; this Court also rejected the husband's claim that the federal ERISA statute or provisions of the Internal Revenue Code superseded state law). We therefore affirm the trial court's January 21, 2014 order attaching Husband's LHWCA benefits for the payment of alimony.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2014