J. A03033/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.L. | : | IN THE SUPERIOR COURT OF |
| Appellee | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.L., III | : | |
| Appellant | : | No. 1264 MDA 2014 |

Appeal from the Order Entered June 24, 2014
In the Court of Common Pleas of Dauphin County
Civil Division No(s).: 64 DR 2013

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED APRIL 21, 2015**

Appellant, G.L., III ("Father"), appeals from the order entered in the Dauphin County Court of Common Pleas determining the amount of child and spousal support he is to pay Appellee, K.L. ("Mother"), for her and the parties' three children ("Children"). Father contends the court erred by assigning an earning capacity to him, while also using educational grants and his Veterans Administration ("VA") disability income. He also claims the court violated his constitutional right to equal protection under the law by treating him differently than other obligors similarly situated. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

The trial court summarized the facts and procedural posture of this case as follows:

> [Father and Mother] were married June 20, 2005 and divorced November 13, 2013. They have three [Children], currently ages seven, six and two, who primarily reside with [Mother]. [She] filed a complaint seeking support [on] January 7, 2013. Following an office conference, [the trial court] issued orders as recommended by the conference officer, directing [Father to] pay child and spousal support. After [Father] sought *de novo* review, and following a hearing, I issued an order [on] July 18, 2013, directing that, effective January 7, 2013, [Father] pay [Mother] $2,607 per month, allocated $2,225 for child support and $382 for spousal support. In determining the amount of support due, I assigned [Father] a monthly net income of $4,486. At the time the order was entered, [Father] was a full-time undergraduate student at Penn State University [and] was not employed. [Father's] assigned income included federal and state educational grants, a government housing allowance and VA disability benefits. I also assigned him full-time wages based upon an earning capacity of $10 per hour over a forty-hour work week.
>
> [Father] did not appeal from the July 18, 2013 order; however, . . . on August 1, 2013, he filed a petition to suspend his support obligation based upon increased custodial time. Following an office conference, I entered two orders on December 26, 2013, as recommended by the conference officer. The first, effective, August 1, 2013 through November 12, 2013, required [Father] to pay $2,352 per month allocated $1,992 for child support ($1,304 basic child support, $665 child care, $22 dance) and $360 for spousal support. Effective November 13, 2013, the date of the parties' divorce, the order was reduced to child support only of $1,992 per month.
>
> In determining the support due, the conference officer assigned [Father] and [Mother] net incomes of $4,343 and $1,150, respectively. [Father's] income again included federal Pell grant money, the housing allowance, VA disability benefits and the same earning capacity assigned

to him in the prior proceeding. The conference officer also included as income to [Father] state educational grant money he was not receiving in 2014 because, according to the conference officer, [Father] told her at the conference that he did not apply for the state grant solely because he did not want that money included in calculating his support obligation.[1] [Mother] who had been primarily a stay-at-home parent during the parties' marriage, was assigned an earning capacity of $7.50 per week working full-time (forty hours per week).

[1] [Father's] income included $5,645 per year federal Pell grant (net), $3,700 per year state grant (net), $10,179 per year housing allowance (net) based upon a stipend of $1,131 per month for nine months, $15,372 per year VA benefits (net) and an earning capacity of $400 per week (gross).

[Father] filed a timely request for a *de novo* hearing, held February 26, 2014. The relevant evidence offered concerning [Father's] income and earning capacity was a[s] follows: [Father] is a U.S. Army veteran who served eight years as a military police officer. He was honorably discharged in 2012. The VA provides him with a monthly disability payment of $1,281 per month. [He] claims he was discharged from the military with a 60% service disability (PTSD) he suffered during his foreign deployments and that as a result, he is not capable of employment. He enrolled at Penn State in the fall of 2012 . . . . While at Penn State, his tuition has been paid through the GI Bill. In addition, he has received a federal Pell grant as well as a state educational grant which cover[s] non-tuition expenses including living expenses. He also receives a housing allowance through the GI Bill which is conditioned upon his attendance at school. As of the *de novo* hearing, [Father] was residing with his mother and had minimal living expenses including no car payment.

Despite his disability and his claim at the *de novo* hearing he is unable to work, [Father] was previously employed for a few months in 2012 as a security guard earning $12 per hour. That employment ended when he was laid off following which he received unemployment compensation between April 2012 through April 2013.

[Father] has also worked in construction since his military discharge. Nevertheless, [Father] claimed he cannot attend school full-time and also work, and that his doctors would confirm this, though he offered no medical or expert evidence of his lack of employability. At the *de novo* hearing, [Mother] asserted that at the most recent Domestic Relations Section office conference, [Father] told the conference officer that he chooses not to work since any income he makes will be attributed to him (and increase his support obligation). The domestic relations Section Director confirmed that [Father] indeed told the conference officer that if he is held to an earning capacity, he will get a doctor's letter stating he is disabled. [Father] did not refute that he made such a statement.

Trial Ct. Op., 6/24/14, at 1-3 (references to record and footnote omitted).

On June 24, 2014 the court entered an order which provided, *inter alia*, as follows:

(1) Effective, August 1, 2013 through November 12, 2013, [Father] owes $2,346.59 per month allocated $1,989.51 for child support ($1304.49 basic child support, $665.21 child care, $19.81 extracurricular expenses) and $357.08 for spousal support.

(2) Effective November 13, 2013, the date of the parties' divorce through January 13, 2014, the order is reduced to child support only, of $1989.51 for child support.

(3) Effective January 14, 2014 to date, the order for child support is $1,882.34 per month ($1,266.39 basic child support, $597.87 child care, $18.08 extracurricular expenses).

Order, 6/24/14.

This timely appeal followed. Father filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

- 4 -

Father raises the following issues for our review:

A. Did the lower court abuse its discretion or commit an error of law by assigning an earning capacity to [Father] while also using educational grants as included income, in addition to his V.A. disability income[?]

B. Did the lower court violate [Father's] constitutional right to equal protection under the law by treating him different than other obligors similarly situated[?]

Father's Brief at 7.

First, Father argues that the court erred in assigning an earning capacity to him while also using educational grants and his disability income to calculate his support obligation. Father asserts he cannot work full or part-time because he is in college full-time and his disability prevents him from working and attending college.[1] Father's Brief at 15. He avers: "It is

---

[1] In support of his disability claim, Father refers to the reproduced record at pages 52 to 57. Father's Brief at 15 n.1. At the hearing, Appellee objected to the introduction of Appellant's medical record. N.T., 2/26/14, at 8. Appellant does not indicate in the argument "a reference to the place in the record where the matter referred to appears[.]" **See** Pa.R.A.P. 2119(c). Our review of the record does not reveal the medical report in the certified record.

This Court has stated:

Pa.R.A.P. 1931(a)(1) provides that "the record on appeal, including the transcript and exhibits necessary for the determination of the appeal, shall be transmitted to the appellate court within 60 days after the filing of the notice of appeal." Pa.R.A.P. 1931(a)(1).

"It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case." Any document which

inconsistent, both conceptually and intellectually, to hold him to a full-time earning capacity, and to use benefits he receives from the government that allows him to attend college, when those benefits are conditioned upon him attending school full time." *Id.* at 15-16. Father claims the court erred in including educational benefits and housing benefits under the GI Bill as income. *Id.* at 19. He argues that educational grants should be considered "public assistance" and excluded from income for purposes of support. *Id.* at 22, 24.

Our review is governed by the following principles:

> Our scope of review when considering an appeal from a child support order is as follows:
>
> When evaluating a support order, this Court may only reverse the trial court's determination where the

---

is not part of the official certified record is considered to be nonexistent, which deficiency may not be remedied by inclusion in the reproduced record. It is the responsibility of the appellant to provide a complete record to the appellate court on appeal, including transcription of deposition testimony.

*Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 106 n.1 (Pa. Super. 2011) (citations omitted).

We note our Supreme Court holds "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Pa.R.A.P. 1921 note (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)). In the instant case, Appellee disputes the inclusion of these documents in the reproduced record, therefore we will not consider them. *See id.*; *Brandon*, 34 A.3d at 106 n.1.

order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Morgan v. Morgan*, 99 A.3d 554, 556-57 (Pa. Super. 2014) (citation omitted).

"In Pennsylvania, child support awards are made in domestic relations matters in accordance with specific statutory guidelines. . . . The guidelines provide extremely detailed instructions for calculating spousal and child support awards **based on the obligor's net income from all sources** . . . ." *Commonwealth v. Hall*, 80 A.3d 1204, 1216-17 (Pa. 2013) (emphasis added).

Rule 1910.16-2(a) provides:

Generally, **the amount of support to be awarded is based upon the parties' monthly net income**.

**(a) Monthly Gross Income.** Monthly gross income is ordinarily based upon at least a six-month average of **all of a party's income**. The term "income" is defined by the support law, 23 Pa.C.S.A. § 4302, and includes income from any source.

Pa.R.C.P. 1910.16-2(a) (emphasis added).

Section 4302 of the Domestic Relations Code defines income as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and **permanent disability benefits**; workers' compensation; unemployment compensation; **other entitlements to money** or lump sum awards, **without regard to source**, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and **any form of payment due to and collectible by an individual regardless of source**.

23 Pa.C.S. § 4302 (emphases added).

In **Parker v. Parker**, 484 A.2d 168 (Pa. Super. 1984), this Court held service-connected disability VA benefits were a source of income for alimony *pendente lite* purposes. **Id.** at 169, (cited with approval in **Uveges v. Uveges**, 103 A.3d 825 (Pa. Super. 2014)). This Court has rejected the argument that housing allowances from the military were not income available for support:

> Instantly, we find this Court's decision in **Alexander v. Armstrong**, [ ] 609 A.2d 183 ([Pa. Super.] 1992), persuasive, despite [the f]ather's attempts to distinguish those facts from his situation. In **Alexander**, this Court addressed a claim by the father, who was stationed in Okinawa, Japan, that his housing and quarters allowances did not constitute income for support calculation purposes:

> [R]elevant to our analysis is the fact that the Pennsylvania Child Support Guidelines, Pa.R.Civ.P.1910.16–1 et seq., are based on the concept that the child should receive the same proportion of parental income that he or she would have received **if the parents lived together**. If [the child] was living with [his father] or [his father's] new family, he would share in the benefit from the allowances [his father] receives from the Navy for housing and utilities. However, because [the child] does not live with [his father] or [his father's family], he does not receive any benefits from them. Accordingly, in keeping with the guidelines, **we must include in [the father's] income his [housing and quarters allowances].**

*Id.* at 187.

***Krankowski v. O'Neil***, 928 A.2d 284, 286 (Pa. Super. 2007) (emphases added).

In ***Spicer v. Com., Dept. of Public Welfare***, 428 A.2d 1008 (Pa. Cmwlth. 1981),[2] the petitioner appealed from an order of the Department of Public Welfare (DPW) which affirmed the decision of the Bucks County Board of Assistance (CBA) to discontinue her food stamps due to excess income. *Id.* at 1008. The petitioner received the following: "a Basic Educational Opportunity Grant (BEOG) for $544.00, . . ., and a grant from the Pennsylvania Higher Education Assistance Agency (PHEAA) for $250.00." *Id.* at 1009. The Commonwealth Court found: "Since the Petitioner's BEOG and PHEAA grant were not specifically earmarked by the granting agencies

---

[2] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***NASDAQ OMX PHLX, Inc. v. PennMont Sec.***, 52 A.3d 296, 308 n.7 (Pa. Super. 2012) (citation omitted). Instantly, Father contends his educational grants are akin to public assistance. Therefore, we look to the Commonwealth Court for guidance. *See id.*

and the grants were of a general nature, covering general living expenses as well as tuition and fees, **the entire grant excluding the tuition was properly included as income for food stamp purposes**." *Id.* at 1011 (emphasis added).

> As is provided in Pa.R.C.P. 1910.16–2(d)(1), generally there is no change to the support obligation following a voluntary reduction of income:
>
> > **(1) Voluntary Reduction of Income.** When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or **changes employment status to pursue an education**, or is fired for cause, there generally will be no effect on the support obligation.
>
> Pa.R.C.P. 1910.16–2(d)(1).

*Smedley v. Lowman*, 2 A.3d 1226, 1228 (Pa. Super. 2010) (emphasis added).

Rule 1910.16–2(d)(4), addressing earning capacities, provides as follows:

> If the trier of fact determines that a party to a support action has **willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity**. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within

a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16–2(d)(4) (emphasis added).

This Court has stated: "[T]he voluntary choice to forego current employment **in order to further one's education is an employment decision** that should be treated no differently than a decision to change jobs and salary." ***Kersey v. Jefferson***, 791 A.2d 419, 423 (Pa. Super. 2002) (emphasis added). "In determining a parent's ability to provide support, the focus is on earning capacity rather than on the parent's actual earnings." ***Reinert v. Reinert***, 926 A.2d 539, 542 (Pa. Super. 2007) (citation omitted).

Father claims the court erred in assigning an earning capacity to him and including his educational and housing benefits under the GI Bill as income. He avers he is unable to work because of his disability. He contends his benefits under the GI Bill should be considered "public assistance" and excluded from income for purposes of support.

In the case *sub judice*, the trial court opined:

> [Father's] decision here to forego full time earnings in order to attend college was clearly voluntary and subordinated the immediate financial needs of his children to his career aspirations. Inasmuch as [Father] has willfully failed to obtain or maintain appropriate employment, this court may attribute to him an income equal to his earning capacity to help support his three children.

In deciding upon his earning capacity, this court takes into consideration the totality of [Father's] circumstances, including his age (28), health, work experience, earnings history and child care responsibilities. Pa.R.C.P. 1910.16-2(d)(4). With regard to [Father's] health, he failed to provide any medical or expert evidence that he is unable to obtain and maintain employment. While he cited the VA's finding of a 60% disability, he failed to provide any evidence connecting that finding to his employability. The record otherwise revealed he has maintained employment since the VA's finding: following his discharge from the military he has been employed full-time as a security guard until he was laid off and has also worked in construction, the latter occurring while he was enrolled in college. The record additionally supports [Mother's] argument that [Father] refrains from obtaining employment because any income he earnings will be attributed to him for support.

\* \* \*

Furthermore, the record presented before this court revealed that the grant monies [Father] receives are available to cover his personal living expenses and thus reflect the true nature and extent of his financial resources. As noted, his tuition is completely covered by the GI Bill.[3] In addition, he receives a housing allowance for the months he is considered in school, an allowance which appears to be a windfall to [Father] inasmuch as he lives with his mother.[4]

---

[3] We note the trial court did **not** include the tuition as part of Father's net available income for child support.

[4] The trial court noted that although Father's lack of living expenses could warrant an upward deviation for his support obligation, the record was insufficient on the issue. Trial Ct. Op. at 13 n.10. At the hearing, the following exchange took place regarding Father's living expenses:

[Counsel for Mother]: I will just say in closing [Father] lives with his mother and doesn't have a car payment. He has no expenses. . . .

* * *

> [Father], while not working and having minimal living expenses, receives a yearly $5,645 federal Pell grant, $3,700 state educational grant, $10,179 housing allowance and $15,372 VA benefits, a total net of $34,896, or $2,908 per month. From this he is ordered to pay $1,304.49 basic child support for his three children [of] $1,266.39 under the current order.

Trial Ct. Op. at 7-8, 11, 13 (citation to the record omitted).

We discern no abuse of discretion. **See Morgan**, 99 A.3d at 556-57. The court calculated Father's support obligation based upon his monthly net income pursuant to Pa.R.C.P. 1910.16-2(a)(2). Father's disability benefits are income for child support. **See Parker**, 484 A.2d at 169. The court properly considered Father's housing allowance. **See Krankowski**, 928 A.2d at 286. The court did not abuse its discretion in considering Father's Pell grant. **See Spicer**, 428 A.2d at 1011. Father voluntarily reduced his income by changing his employment status and choosing to pursue his education. **See Smedley**, 2 A.3d at 1228. The trial court did not abuse its discretion in imputing an earning capacity to Father. **See** Pa.R.C.P. 1910.16-2(d)(4); **Kersey**, 791 A.2d at 423.

---

> [Counsel for Father]: Do you know why he lives with his mother?
>
> The Court: Would that be your testimony?
>
> [Father]: Yes, Your Honor.

N.T., 2/26/14, at 29.

- 13 -

Given our resolution of Appellant's first issue, we find the trial court did not treat him differently than other obligors similarly situated in violation of his constitutional right to equal protection under the law. "[**A**] **parent's duty to support his minor children is absolute**, and the purpose of child support is to promote the children's best interests. **The court has no legal authority to eliminate an obligor's support obligation**, where the obligor can reasonably provide for some of the children's needs." *Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009) (emphases added). The trial court found Appellant was obligated to support his three minor children. *See id.*

For all of the foregoing reasons, the order is affirmed.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015

- 14 -